## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-md-2724 |
| | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: | Civil Action Nos. |
| *Ahold USA, Inc., et al. v. Actavis Holdco U.S., Inc., et al.* | 18-2641<br>18-2401<br>18-3299<br>18-2533<br>18-284 |
| *1199SEIU Nat'l Benefit Fund, et al. v. Actavis Holdco US, Inc.* | |
| *Humana Inc. v. Actavis Elizabeth, LLC, et al.* | |
| *West Val Pharm., et al. v. Actavis Holdco U.S., Inc.* | **ORAL ARGUMENT REQUESTED** |
| *The Kroger Co., et al. v. Actavis Holdco U.S., Inc.* | |

**DEFENDANT PERRIGO NEW YORK, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS INDIVIDUAL MOTION TO DISMISS
PLAINTIFFS' "OVERARCHING CONSPIRACY" CLAIMS**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. OVERARCHING CONSPIRACY ALLEGATIONS.................................................... 2

III. ARGUMENT................................................................................................................. 5

    A. Plaintiffs Must Allege *Facts* Plausibly Suggesting That Perrigo Participated in The Particular Overarching Conspiracies They Allege. ................ 5

    B. The Limited Facts Plaintiffs Allege Concerning Perrigo Fail to Support the Plausible Inference that Perrigo Knowingly Joined or Agreed to Any Overarching Conspiracy. ....................................................................................... 7

    C. Plaintiffs Fail to Allege Essential Facts Necessary to State An Overarching Conspiracy Claim Against Perrigo. ...................................................................... 10

        1. There Are No Factual Allegations That Perrigo Was Even Aware of the Alleged Conduct Involving Other Products, Much Less That It Agreed To Any Overarching Conspiracy............................................. 11

        2. There Are No Plausible Allegations That Perrigo Benefitted From Purported Conspiracies Concerning Other Products, Or Supported Such Conspiracies Through Its Alleged Conduct................................... 11

IV. CONCLUSION ........................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Chiro. Ass'n v. Trigon Healthcare*,
367 F.3d 212 (4th Cir. 2004) ..................................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................5, 6

*In re Auto. Parts Antitrust Litig.*,
2016 WL 8200512 (E.D. Mich. Apr. 13, 2016) .....................................................................11

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (1999) ..................................................................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................5, 6

*In re Blood Reagents Antitrust Litig.*,
756 F. Supp. 2d 637 (E.D. Pa. 2010) ......................................................................................10

*Fragale & Sons Beverage Co. v. Dill*,
760 F.2d 469 (3d Cir. 1985) ....................................................................................................9

*Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 348–51 (2010) .......................................................6, 2

*In re K-Dur Antitrust Litig.*,
No. 01-1652, 2016 WL 755623 (D.N.J. Feb. 25, 2016) ...............................................6, 11, 12

*Monsanto, Inc. v. Spray Rite Corp.*,
465 U.S. 752 (1984) ..................................................................................................................8

*Papasan v. Allain*,
478 U.S. 265 (1986) ..................................................................................................................6

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*
2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) ...................................................................11, 12

*In re Processed Eggs Antitrust Litig.*,
821 F. Supp. 2d 709 (E.D. Pa. 2011) ......................................................................................6

*Superior Offshore Int'l Inc. v. Bristow Group Inc.*,
738 F. Supp. 2d 505 (2010) ...................................................................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................................................................6

*Tose v. First Penn. Bank, N.A.*,
   648 F.2d 879 (3d Cir. 1981)........................................................................................................9

*United States v. Kelly*,
   892 F.2d 255 (3d Cir. 1989)........................................................................................................6

*United States v. Malik*,
   No. 08-614, 2009 WL 4641706 (E.D. Pa. Dec. 7, 2009), *aff'd*, 424 F. App'x
   122 (3d Cir. 2011)..............................................................................................................8, 12

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
   627 F.3d 85 (3d Cir. 2010)..........................................................................................................6

*Weit v. Continental Ill. Nat'l Bank & Trust Co.*,
   641 F.2d 457 (7th Cir. 1981) ....................................................................................................10

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative*,
   No. 15-6480, 2019 WL 130535 (E.D. Pa. Jan. 8, 2019).............................................................6

**Statutes**

Sherman Act, Section 1..........................................................................................................6, 9

Defendant Perrigo New York, Inc. ("Perrigo") submits this Memorandum of Law in Support of its Individual Motion To Dismiss Plaintiffs' "Overarching Conspiracy" Claims Against Perrigo New York, Inc. (the "Motion"). The Motion seeks dismissal of the "overarching conspiracy" claims asserted against Perrigo in the following pleadings (collectively, the "Overarching Conspiracy Complaints"): Direct Purchaser Plaintiffs' Amended Class Action Complaint ("DPP Complaint"); End Payor Plaintiffs' First Amended Class Action Complaint ("EPP Complaint"); Indirect Reseller Plaintiffs' Amended Class Action Complaint ("IRP Complaint"); The Kroger Plaintiffs' Amended Complaint ("Kroger Complaint"); and Humana, Inc.'s Amended Complaint ("Humana Complaint").

## I.   PRELIMINARY STATEMENT

Plaintiffs in the Overarching Conspiracy Complaints have not pled cognizable overarching conspiracy claims, as demonstrated in Defendants' Joint Motion to Dismiss. Even if they had properly alleged an overarching conspiracy, however, it is clear that their allegations concerning Perrigo are insufficient to state a claim that Perrigo joined in and participated in any such conspiracy. Thus, Plaintiffs' overarching conspiracy claims against Perrigo must be dismissed.

Plaintiffs' only allegations concerning Perrigo are that (a) it increased prices for a few products (with different Plaintiffs alleging different price increases), (b) purportedly "in parallel" with certain other companies that sold the same products (but not other products at issue), (c) certain of its employees attended trade association meetings or trade shows, and (d) Perrigo's offices were searched in connection with an investigation by the Antitrust Division of the United States Department of Justice ("DOJ"). EPP Compl. ¶¶ 20, 186-212, 657(l); DPP Compl. ¶¶ 325-46; IRP Compl. ¶¶ 43, 86-96, Kroger Compl. ¶¶ 126, 377-85, 492-510, 688-701; Humana Compl. ¶¶ 181-82, 591-610. There are no factual allegations that Perrigo ever discussed or agreed to any

"overarching conspiracy" concerning the (differing) other products at issue in the different Overarching Conspiracy Complaints or that it was even aware of conduct concerning other products that are alleged in those Complaints. Likewise, there are no plausible factual allegations that Perrigo benefitted from the conspiracies Plaintiffs allege concerning other products or that the success (or failure) of the Perrigo price increases Plaintiffs allege depended on the pricing of those other, non-competing, products. In short, the factual allegations concerning Perrigo in the Overarching Conspiracy Complaints fail to state a plausible claim that Perrigo joined or participated in any overarching conspiracy, requiring dismissal of those claims against Perrigo.

## II.  OVERARCHING CONSPIRACY ALLEGATIONS

Seven complaints pending in this MDL allege that certain Defendants (which vary among the complaints) participated in an overarching conspiracy (which is differently described in the complaints) concerning certain generic pharmaceutical products (that differ between the complaints). Perrigo is a defendant in five of the seven Overarching Conspiracy Complaints.[1]

Perrigo is not a defendant in the complaint filed by the States, the first Overarching Conspiracy complaint to be filed. Plaintiff States' Consolidated Amended Compl. ("State Complaint"). The State Complaint alleges a purported "overarching conspiracy" centering around Defendant Heritage Pharmaceuticals ("Heritage"), with Heritage a producer or seller of each of the products that are alleged to be part of that conspiracy. *See* State Complaint ¶¶ 2, 11. The allegations in the State Complaint all concern purported conduct from 2013 through 2015.

---

[1] As mentioned above, Perrigo is a named defendant in the following Overarching Conspiracy Complaints: DPP Complaint, EPP Complaint, IRP Complaint, Kroger Complaint, and Humana Complaint. Perrigo is not named in the Plaintiff States' Consolidated Amended Complaint or the Marion Plaintiffs' First Amended Complaint.

The three class Overarching Conspiracy Complaints—filed by the DPPs, EPPs, and IRPs respectively—largely track the State Complaint, with a few exceptions. Among the exceptions are claims that manufacturers of Nystatin Cream and Nystatin Ointment conspired to raise the prices of those products in 2011. EPP Compl. ¶¶ 186-212; DPP Compl. ¶¶ 325-46; IRP Compl. ¶¶ 86-96. Perrigo is alleged to be a manufacturer of Nystatin Cream and Nystatin Ointment, and the class Overarching Conspiracy Complaints allege that Perrigo raised prices of those products "in parallel" with certain other Defendants. EPP Compl. ¶¶ 186-212; DPP Compl. ¶¶ 325-46; IRP Compl. ¶¶ 86-96. Those are the only allegations of any purported "conspiratorial" conduct by Perrigo in the class Overarching Conspiracy Complaints—i.e., that Perrigo raised prices of Nystatin Cream and Nystatin Ointment in 2011.

Heritage is not alleged to have ever manufactured or sold Nystatin Cream or Nystatin Ointment. EPP Compl. ¶¶ 186-212; DPP Compl. ¶¶ 325-46; IRP Compl. ¶¶ 86-96. It is alleged to have sold a completely different formulation of Nystatin (oral tablets) that is used to treat different conditions, has different competitors, and is alleged to have experienced price increase years after the alleged price increase for Nystatin Cream and Nystatin Ointment. EPP Compl. ¶¶ 213–50; DPP Compl. ¶¶ 347-76; IRP Compl. ¶¶ 74-83. Claims concerning Nystatin tablets are part of the State Complaint as well as the other Overarching Conspiracy Complaints.

Plaintiffs in the class Overarching Conspiracy Complaints claim that Defendants (which differ among the cases) had an overarching agreement concerning an allocation of market shares for the products identified in those Complaints (which vary among the cases) and price increases for some of those products. There are no factual allegations, however, that Perrigo ever discussed or agreed with the other Defendants in those cases on any such "overarching conspiracy," nor that

Perrigo was even aware of the price increases and alleged conduct involving other products that is alleged in these Complaints.

Plaintiffs in the other two Overarching Conspiracy Complaints—the Humana and Kroger plaintiffs—allege a different purported overarching conspiracy involving different products, different Defendants, and a different "overarching conspiracy" theory. These plaintiffs claim that there was an overarching conspiracy encompassing not just the fifteen products at issue in the State complaint, or even the nineteen products at issue in the class Overarching Conspiracy Complaints, but also numerous additional products that the class plaintiffs claim were part of separate, individual conspiracies, and not part of any Overarching Conspiracy. With regard to Perrigo, these Complaints again allege just that Perrigo raised prices of certain products "in parallel" with certain other Defendants. EPP Compl. ¶¶ 186-212; DPP Compl. ¶¶ 325-46; IRP Compl. ¶¶ 86-96; Kroger Compl. ¶¶ 326-48, 367-86, 472-517, 688-701; Humana Compl. ¶¶ 349-68, 379-91, 522-36, 591-610. The Perrigo products identified in these Complaints are Nystatin Cream (overlapping with the class Overarching Complaints), Nystatin Ointment (likewise), Clobetasol (which class plaintiffs allege was not part of an Overarching Conspiracy), Desonide (likewise) and Econozole (likewise).

As with the class Overarching Conspiracy Complaints, the Kroger and Humana plaintiffs do not allege that Perrigo ever discussed any alleged overarching conspiracy with the other Defendants in those Complaints, or that it was even aware of the price increases and other alleged conduct concerning other products that is alleged in those Complaints. Nor are there any allegations that Perrigo benefitted from alleged price increases or alleged customer allocation agreements concerning other products that it neither manufactured nor sold.

All of the Plaintiffs in the Overarching Conspiracy Complaints that name Perrigo a defendant allege that certain Perrigo employees participated in certain trade association meetings and industry trade shows, but there are no factual allegations of any purported discussions of any overarching conspiracy at any of those meetings. EPP Compl. ¶¶ 198-200, 210; DPP Compl. ¶ 343; Kroger Compl. ¶ 377-85, 492-510; Humana Compl. ¶¶ 601, 609. Plaintiffs allege that there are frequent and recurring trade association meetings and trade shows in the generic pharmaceutical industry, so it should be no surprise that certain of the alleged trade association meetings and trade shows Perrigo employees allegedly attended were within several months of the price increases Plaintiffs allege that Perrigo took. Other trade association meetings and trade shows allegedly attended by Perrigo employees are years before or after such price increases. EPP Compl. Exh. 1 (Trade Association Attendance).

Most of the Overarching Conspiracy Complaints also allege that Perrigo's offices were searched in 2017 in connection with an investigation by the US DOJ's Antitrust Division. EPP Compl. ¶ 29; IRP Compl. ¶¶ 29, 50; Kroger Compl. ¶¶ 17, 126; Humana Compl. ¶ 156. Other than that the investigation relates to "generic pharmaceuticals," however, there are no allegations about how, if at all, the DOJ's search warrant purportedly relates to the (different) conspiracies Plaintiffs allege in their Overarching Conspiracy Complaints.

### III.  ARGUMENT

#### A.  Plaintiffs Must Allege *Facts* Plausibly Suggesting That Perrigo Participated in The Particular Overarching Conspiracies They Allege.

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Speculative theories without additional supporting facts do not give rise to an antitrust claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555-57. Courts "are not bound to accept as true a legal conclusion couched

as a factual allegation" on a motion to dismiss. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Conclusory allegations need not be accepted as true. *Iqbal*, 556 U.S. at 678.

A Sherman Act, Section 1 claim requires Plaintiffs to allege "enough factual matter (taken as true) to suggest that an agreement [to conspire] was made." *Twombly*, 550 U.S. at 556. An agreement exists when there is a unity of purpose, a common design and understanding, a meeting of the minds, or a conscious commitment to a common scheme. *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010).

To successfully plead the existence of an overarching conspiracy, Plaintiffs must allege facts showing that (1) each alleged conspirator was aware of and committed to a common goal; (2) the desired effect of the conspiracy "will not continue without the continuous cooperation of the conspirators"; and (3) there was sufficient overlap among the participants in the individual conspiracies. *United States v. Kelly*, 892 F.2d 255, 258-59 (3d Cir. 1989) (citation omitted); *Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 348–51 (2010); *In re K-Dur Antitrust Litig.*, No. 01-1652, 2016 WL 755623, at *21 (D.N.J. Feb. 25, 2016).

Plaintiffs cannot meet this burden by merely pleading general allegations attributing awareness, conduct and motivations to unidentified "[d]efendants" as a group. *See In re Processed Eggs Antitrust Litig.*, 821 F. Supp. 2d 709, 719-20 (E.D. Pa. 2011) (collecting cases); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008). Instead, Plaintiffs must plead some particularized facts relating to Perrigo, showing that Perrigo was aware and committed to the supposed common goals of the overarching conspiracy. *Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative*, No. 15-6480, 2019 WL 130535, at *3-*5 (E.D. Pa. Jan. 8, 2019) (dismissing claim where plaintiffs alleged only that "defendants"

participated in a conspiracy but did not provide "further factual matter specifying [defendants'] participation in the alleged . . . scheme[]").

None of these facts are alleged with regard to Perrigo's participation in any overarching conspiracy, and the limited facts that Plaintiffs do allege concerning Perrigo do not support their claim that Perrigo participated in an overarching conspiracy, requiring dismissal of Plaintiffs' overarching conspiracy claims against Perrigo.

### B. The Limited Facts Plaintiffs Allege Concerning Perrigo Fail to Support the Plausible Inference that Perrigo Knowingly Joined or Agreed to Any Overarching Conspiracy.

Aside from allegations concerning Perrigo's corporate form, all of the non-conclusory factual allegations concerning Perrigo in the Overarching Conspiracy Complaints fall into one of three different categories:

1. allegations that Perrigo raised prices for Nystatin Cream, Nystatin Ointment, Clobetasol (only Humana and Kroger), Desonide (likewise), and Econazole (likewise);[2]

2. allegations that certain Perrigo employees attended certain trade association meetings and trade shows;[3] and

3. allegations that Perrigo is under investigation by the Department of Justice's Antitrust Division.[4]

None of these allegations concerning Perrigo, taken separately or collectively, creates a plausible inference that Perrigo entered into, joined or otherwise participated in any overarching

---

[2] EPP Compl. ¶¶ 186-212; DPP Compl. ¶¶ 325-46; IRP Compl. ¶¶ 86-96; Kroger Compl. ¶¶ 326-48, 367-86, 472-517, 688-701; Humana Compl. ¶¶ 349-68, 379-91, 522-36, 591-610.

[3] EPP Compl. Exh. 1 (Trade Association Attendance).

[4] EPP Compl. ¶¶ 20, 186-212, 657(l); DPP Compl. ¶¶ 325-46; IRP Compl. ¶¶ 43, 86-96, Kroger Compl. ¶¶ 126, 377-85, 492-510, 688-701; Humana Compl. ¶¶ 181-82, 591-610.

conspiracy that encompassed not just these products but also dozens of other products that Perrigo is not alleged to have ever made or sold.  These exact same facts concerning price increases for Clobetasol, Desonide and Econazole are alleged in separate complaints filed by the class plaintiffs, in which they claim that those products were the subject of *separate price-fixing conspiracies* that were not part of any overarching conspiracy.  Clobetasol Complaints [16-CB-27242] [Dkt. 91] ¶154, [Dkt. 73] ¶ 138, [Dkt. 13] ¶ 145; Desonide Complaints [16-DS-27243] [Dkt. 95] ¶136, [Dkt. 70] ¶ 114, [Dkt. 44] ¶ 119; Econazole Complaints [16-EC-27242] [Dkt. 133] ¶147, [Dkt. 81] ¶ 135, [Dkt. 32] ¶ 105.  There is also nothing about the alleged price increases for Nystatin Cream and Nystatin Ointment to distinguish those price increases from the price increases alleged concerning Clobetasol, Desonide or Econazole, despite the fact that claims concerning Nystatin Cream and Nystatin Ointment are only included in purported "overarching conspiracy" Complaints and not in other "separate conspiracy" complaints filed by class Plaintiffs.

There are no plausible factual allegations that the alleged price increases for these products were dependent on—or even benefitted from—alleged price increases and other conduct concerning the other products identified in the Overarching Conspiracy Complaints.  Those price increases do not, therefore, support an inference that Perrigo participated in an overarching conspiracy.  *See United States v. Malik*, No. 08-614, 2009 WL 4641706, at *13 (E.D. Pa. Dec. 7, 2009) ("There must be some interdependence among the members of a single conspiracy so that each member depends upon, is aided by, or has an interest in the success of the others.") (citation omitted), *aff'd*, 424 F. App'x 122 (3d Cir. 2011).  Plaintiffs' allegations concerning Perrigo's pricing do not tend to "exclude the possibility" that the price increases were independent of one another, and there is nothing about them that suggests they were related through some overarching conspiracy.  *Cf. Monsanto, Inc. v. Spray Rite Corp.*, 465 U.S. 752, 753 (1984) (to make a claim

for a Sherman Act Section 1 violation, plaintiffs must establish facts that exclude the possibility of independent action).

Plaintiffs' allegations regarding Perrigo employees' attendance of various trade association and customer-organized meetings likewise do not support their claims that Perrigo participated in an overarching conspiracy. Plaintiffs do not allege that Perrigo discussed any purported overarching conspiracy at any of these meetings, much less agreed to join such a conspiracy. Instead, Plaintiffs merely allege that Perrigo had the "opportunity" to conspire at these meetings. *See, e.g*, EPP Compl. ¶¶ 210 ("Again, Defendants had the opportunity to discuss pricing of Nystatin external ointment at numerous industry events during the relevant period."); DPP Compl. ¶ 343 ("Defendants' employees (including NAMs) had the opportunity to discuss pricing of nystatin ointment at numerous trade association and industry events . . ."); Humana Compl. ¶¶ 601, 609 ("Again, Defendants had the opportunity to discuss pricing of Nystatin Ointment at numerous industry events during the relevant period."); Kroger Compl. ¶¶ 147, 159 ("The frequent trade association meetings provided an ideal mechanism through which Defendants could and did meet in person…"). As the Third Circuit and other appellate courts have routinely held, the "opportunity" to conspire is insufficient to establish an inference of conspiracy. *See, e.g.*, *In re Baby Food Antitrust Litig.,* 166 F.3d 112, 133 (1999) (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.,* 998 F.2d at 1242, n.15) ("[E]vidence of social contacts and telephone calls among representatives of the defendants was insufficient to exclude the possibility that the defendants acted independently."); *Tose v. First Penn. Bank, N.A.,* 648 F.2d 879, 894 (3d Cir. 1981) ("Proof of opportunity to conspire, without more, will not sustain an inference that a conspiracy has taken place."); *Fragale & Sons Beverage Co. v. Dill,* 760 F.2d 469, 473 (3d Cir. 1985) ("Evidence of an opportunity to conspire . . . is not enough to sustain an antitrust plaintiff's

burden, and, without more, does not create a jury question on the issue of concerted action.") (citation omitted); *see also Am. Chiro. Ass'n v. Trigon Healthcare,* 367 F.3d 212, 227 (4th Cir. 2004) (holding that "mere contacts and communications, or the mere opportunity to conspire . . . is insufficient evidence of an anticompetitive conspiracy") (citation omitted); *Weit v. Continental Ill. Nat'l Bank & Trust Co.,* 641 F.2d 457, 462 (7th Cir. 1981) (observing that "the mere opportunity to conspire, even in the context of parallel business conduct, is not necessarily probative evidence") (citation omitted). Membership and attendance of trade conferences alone are insufficient to give rise to the inference of agreement to the conspiracy. *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 637, 640–41 (E.D. Pa. 2010).

Finally, Plaintiffs' allegations concerning a search warrant executed by the Department of Justice at Perrigo's corporate office as part of antitrust investigations of "the generic pharmaceutical industry" create no reasonable inference that Perrigo participated in any overarching conspiracy. First, the existence of government investigations "do not enhance the plausibility of Plaintiffs' claim and do not warrant subjecting [d]efendants to the burdens of antitrust discovery." *Superior Offshore Int'l Inc. v. Bristow Group Inc.*, 738 F. Supp. 2d 505, 516 (2010). Moreover, the only action taken by the DOJ to date—informations filed against two former Heritage executives—concerns *separate* alleged conspiracies concerning two products (doxycycline hyclate and glyburide) that Perrigo neither manufactured nor sold. *See, e.g.*, EPP Compl. ¶ 16; DPP Compl. ¶¶ 8, 34; IRP Compl. ¶ 27; Kroger Compl. ¶ 3; Humana Compl. ¶ 5.

### C. Plaintiffs Fail to Allege Essential Facts Necessary to State An Overarching Conspiracy Claim Against Perrigo.

The Overarching Conspiracy Complaints are likewise notable for what they *do not allege* concerning Perrigo. Plaintiffs fail to allege essential facts necessary to state an overarching conspiracy claim against Perrigo.

1. **There Are No Factual Allegations That Perrigo Was Even Aware of the Alleged Conduct Involving Other Products, Much Less That It Agreed To Any Overarching Conspiracy.**

The conspirators of an overarching conspiracy must each be "aware of and agree[] to the essential purpose of the overarching conspiracy." *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, 2011 WL 7053807, at *30 (E.D.N.Y. Jan. 4, 2011), *report and recommendation adopted*, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012); *In re Auto. Parts Antitrust Litig.*, 2016 WL 8200512, at *4 (E.D. Mich. Apr. 13, 2016) ("Only after a defendant agrees to the common purpose [of the overarching conspiracy] may it be held responsible for the conduct of co-conspirators."). This means that, to bring such a claim, Plaintiffs must allege facts creating at least an inference to each Defendant's *knowing* participation in a conspiracy to raise, fix, maintain, or stabilize the price of all products involved in the conspiracy, not just the products it makes or sells. *Auto. Parts*, 2016 WL 8200512, at *4.

Here, the Overarching Conspiracy Complaints are notable in omitting any factual allegations that Perrigo discussed, much less agreed, with any other Defendant about the purported "overarching conspiracy" they allege. In fact, there are not even allegations that Perrigo was aware of the conduct Plaintiffs allege concerning other products. These failures alone are sufficient to doom Plaintiffs' claim that Perrigo participated in any overarching conspiracy. *Precision Assoc.* 2011 WL 7053807, at *30.

2. **There Are No Plausible Allegations That Perrigo Benefitted From Purported Conspiracies Concerning Other Products, Or Supported Such Conspiracies Through Its Alleged Conduct.**

Plaintiffs' theory of an overarching conspiracy also requires them to plead facts showing that Perrigo's alleged conspiratorial conduct (purportedly raising prices for the five Perrigo products at issue) depended on the success of the other alleged product conspiracies. *In re K-Dur*

*Antitrust Litig.*, 2016 WL 755623, at *21 (in evaluating interdependence, the court engages in an inquiry focused on "the extent to which the success or failure of one conspiracy is independent of a corresponding success or failure by the other."); *United States v. Malik*, 2009 WL 4641706, at *13 ("There must be some interdependence among the members of a single conspiracy so that each member depends upon, is aided by, or has an interest in the success of the others.") (citation omitted), *aff'd*, 424 F. App'x at 122.  Merely pleading that a series of independent conspiracies existed at the same time is insufficient and does not demonstrate interdependence.  Nor is it sufficient that Plaintiffs claim that the alleged conspiracies concerning other products had similar structure and employed similar modus operandi to the alleged conspiracies involving Perrigo products. *Ins. Brokerage*, 618 F.3d at 350-51 (concluding that the "similar nature" of each individual conspiracy "may allege a pernicious industry practice, but they do not plausibly imply an industry-wide conspiracy").  The claim that alleged conspiracies involving Perrigo products were part of an "overarching conspiracy" because they purportedly employed similar mechanisms as other alleged drug conspiracies is akin to arguing that all price-fixing conspiracies involving any products throughout all time are part of the same overarching conspiracy concerning "price-fixing."  The notion is nonsensical.  To show interdependence, Plaintiffs must allege facts demonstrating the "how, when, or where" the individual conspiracies became connected to each other.  *Precision Assoc.,* 2011 WL 7053807, at *30.  There are no plausible factual allegations here to connect Perrigo's alleged pricing conduct to any alleged overarching conspiracy.

Plaintiffs fail to do so here. Plaintiffs do not plead facts suggesting that the success of the price increases for Nystatin Ointment, Nystatin Cream, Clobetasol, Econazole or Desonide depended on conduct Plaintiffs allege concerning other products, or that Perrigo took any action to support purported conspiratorial conduct with regard to other products.  Plaintiffs' references to

Perrigo begin and end with the drugs Perrigo manufactures. EPP Compl. ¶¶ 186-212; DPP Compl. ¶¶ 325-46; IRP Compl. ¶¶ 86-96; Kroger Compl. ¶¶ 688-701; Humana Compl. ¶¶ 591-610. Plaintiffs do not even mention Perrigo elsewhere, and Plaintiffs do not allege what benefits, if any, Perrigo hoped to obtain should any of the other alleged conspiracies succeed. Plaintiffs further do not explain why, for example, the success of a conspiracy regarding Nystatin Ointment would depend on the success of Doxycycline. Certain Plaintiffs theorize that, absent an agreement across a defendant's entire portfolio of drugs, each individual drug conspiracy would fall apart, but there are no allegations concerning the vast majority of the products sold by Perrigo or the other Defendants. *See* Humana Compl. ¶ 262; *see also* Kroger Compl. ¶¶ 817-26. At best, this amounts to speculation. Why an agreement affecting all drugs would be necessary to the success of an agreement regarding one drug remains a mystery, despite nearly 1,500 pages of pleadings. There is certainly nothing in any of the Overarching Conspiracy Complaints that provides any plausible basis to conclude that *Perrigo* participated in any conspiracy concerning products it neither manufactured or sold.

## IV. CONCLUSION

For the reasons stated herein, Perrigo respectfully requests that the Court dismiss the claims against it with prejudice in each of the Overarching Conspiracy Complaints that names Perrigo as specified in the Motion and Proposed Order.

Dated: February 21, 2019                                Respectfully submitted,

/s/ *J. Clayton Everett, Jr.*
Scott A. Stempel
J. Clayton Everett, Jr.
Tracey F. Milich
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Phone: (202) 739-3000
Fax: (202) 739-3001
scott.stempel@morganlewis.com
clay.everett@morganlewis.com
tracey.milich@morganlewis.com

Harvey Bartle IV
Francis A. DeSimone
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5000
Fax: (215) 963-5001
harvey.bartle@morganlewis.com
frank.desimone@morganlewis.com

*Counsel for Defendant Perrigo New York, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify on this 21st day of February 2019, a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the Court's ECF System. Notice of this filing will be sent to all counsel of record by operation of the ECF System.

                                                                         /s/ *J. Clayton Everett, Jr.*
                                                                          J. Clayton Everett, Jr.

Dated:    February 21, 2019